ALBERT V. HAYS ET AL. v. FRANCES J. BOSTICK ET AL.

[51 South. 462.]

PROMISSORY NOTES. *Fraud of third party. Defenses. Vendor and vendee. Foreclosure of lien. Marshaling assets.*

Where in a suit to enforce an equitable mortgage to satisfy the several purchase money notes of the vendees, one for twice the amount of the other, it appeared that only one-fourth of the purchase money was paid in cash; that the vendor dealt with one of the vendees only, who represented to his co-vendee that they were to pay much more for the land than the true consideration, and thereby fraudulently procured from her a sufficiency of cash to pay one-half of the actual consideration and induced her to execute her note payable to the vendor for a much larger sum than her share of the unpaid purchase money, which she placed in his hands for delivery to the vendor, and the same was accordingly delivered, and the vendor at his instance made the deed recite the large and fictitious consideration:—

(*a*) The fraud of the one vendee on the other constituted no defense to the suit, the vendor having acted in good faith; but

(*b*) The pleadings and proceedings being conformed to that end, the interest in the land of the vendee who perpetrated the fraud should be first and separately sold, and the proceeds so applied as to protect the defrauded vendee from paying more than her just share of the purchase money, and to indemnify her for the wrong, if the proceeds be sufficient.

FROM the chancery court of Forrest county.

HON. THADDEUS A. WOOD, Chancellor.

Hays and others, appellants, were complainants in the court below; Mrs. Bostick and another, appellees, were defendants there. From a decree in defendants' favor the complainants appealed to the supreme court. The facts are stated in the opinion of the court.

*Stevens, Stevens & Cook,* for appellants.

The chancellor was forced to the conclusion that no fraud whatever was proved, but took the view that a mutual mistake

as to the terms of the trade existed and that the trade so far as appellee was concerned should be rescinded and a decree accordingly was entered. The court will observe, however, that he granted the relief prayed for against Priester and appointed a commissioner of the court to sell his one-third interest in the lands, and attempted to place appellants in possession of the other two-thirds interest. The decree furthermore does not undertake to require appellants to refund to Mrs. Bostick $1,000 cash, the chancellor taking the view that the testimony nowhere shows that the particular one thousand dollars which appellee gave Priester was used by him in purchasing the land.

Not only is there no evidence in the record connecting appellants with fraud, but the testimony of Hays and Field is uncontradicted that Priester was not their agent and that they had no knowledge whatever of the fact that Priester was imposing upon appellee or that he was making any secret profit whatever. Furthermore, the testimony of Mrs. Bostick herself shows that she and her co-purchaser, Priester, paid a price for these lots below the current market prices at that time. The testimony of appellee and her witnesses not only does. not support the allegations of the cross-bill, but flatly contradicts the same. The testimony of appellee herself furthermore admits that she thought a fraud had been perpetrated upon her when the first note became due, that she gained this impression from a letter which she received from Priester and that she then sat down and wrote to the solicitors for appellants that she could not pay the note and thought that they would have to close out the lien, etc. Her testimony further develops the fact that immediately after the purchase she executed a written power of attorney to her co-tenant Priester authorizing him to act as her agent in the sale of these lands, and it develops that this written power of attorney has never been by her revoked.

This is simply a case where an unscrupulous speculator, Priester, secured a written option in his favor to purchase at

one price and went out and induced appellee, Mrs. Bostick, to join him, concealed from her and misrepresented to her the real price to be paid, and succeeded in making a secret profit unknown at the time either to appellants or appellee. There is no question but that Mrs. Bostick was imposed upon by Priester and that she has a cause of action against Priester to recover from him the secret profit which he made. A typical case of this kind is *Yeaney v. Keck,* 183 Pa. 532, 38 Atl. 1041.

The court will observe that Priester is not in court as a defendant to the cross-bill, and cross-complainant, therefore could not have a decree for any relief against him in this case.

Priester induced Mrs. Bostwick to join him in the purchase of this land; and after gaining her consent he came to Hattiesburg in possession of her promissory notes and her money for the purpose of buying the land. He was therefore unquestionably the agent of Mrs. Bostick in affecting the purchase of this property.

After appellee had trusted Priester to the extent she did, she ought not to impute fraud to appellants because they did not detect his fraud when he represented that he and Mrs. Bostick were getting the land below market price and wanted the consideration named at $3,000. If the act of appellants constituted fraud, it was a fraud on any prospective purchaser from Priester and appellee; it was and is not a fraud affecting any right of appellee in this case.

*Currie & Currie,* for appellees.

Priester committed actionable fraud, and Mrs. Bostick was thereby damaged. 20 Cyc. p. 67; 119 Ala. 429; 24 South. 710; 50 Pac. 40; 61 N. W. 47; 14 Am. St. Rep. 206; 1 L. R. A. 664.

The contract, if indeed there be a contract at all, was entered into on September 21, 1907, and was not to be fully performed until eighteen months thereafter, the last note given by the appellee, Mrs. Bostick, not being due until eighteen months after

its date, upon payment of which by appellee the lien was to be cancelled by appellants. This constitutes an executory contract.

It is proven beyond all reasonable doubt that a most outrageous and unconscionable fraud had been perpetrated upon this good old woman by this slick ex-bank cashier, Priester; that he had fraudulently led her into the execution of a pretended contract out of which he was, by "high finance" to make $666.66, instead of only $500 as stated by him, because if he had dealt honestly with appellee he should have used only $333.33 of the money which he had received and should have returned the balance of $666.66 to her, when he ascertained that the lots could be bought for $2,000 instead of $3,000, with a cash payment of only $500 instead of $1,000, he being under obligations to pay one-third of the cash consideration. He stated to McCullough that by a piece of "high finance" he had made $500 in the deal. What became of the other $166.66 does not appear.

By knowingly making false recitals in the deed of conveyance and thereby aiding Priester in concealing his fraud, and by still further and more completely concealing from Mrs. Bostick the fraud which had been perpetrated upon her by making precisely the same false recitals in their sworn bill of complaint filed May 27, 1908, at a time when appellee had begun to suspect that she had been defrauded and had already offered to rescind the contract; and by refusing to rescind the fraudulent contract which they had so effectually aided Priester in concealing and attempting to hold on to the property of Mrs. Bostick after they were fully apprised of the fraud, the complainants, appellants, became parties to Priester's fraud from that very moment and they are now joint wrongdoers with Priester.

By attempting to hold on to the fruits of a fraudulent contract after being fully advised of the fraud, and especially in this case where they have, by their false acts, played such a conspicuous and effective part; and by attempting to have this con-

tract, now fraudulent in their hands, enforced in a court of equity, in order that they may, by the aid of the court, still further plunder and defraud this victimized woman who by the sweat of her brow and the exercise of frugality and economy has laid away a little money, complainants make themselves parties to the fraud. They not only for a long time and in different manners concealed the fraud, but when it is brought home to their knowledge they not only refuse to restore what they had received under it and to take back what they had given, as was their plain, simple, honest duty but they now wrongfully undertake to compel a full and complete performance by this innocent woman of this fraudulent contract. This cannot be in a court of equity; such a result would be shocking to the conscience of an honest man.

Mayes, J., delivered the opinion of the court.

An examination of this record thoroughly convinces us that a gross wrong was done Mrs. Bostick by Priester, her co-vendee; but we are equally convinced that appellants were not connected with it in any way. Briefly stated, the facts show that the appellants owned certain lands in the city of Hattiesburg and desired to sell the same. They gave an option to Priester on the same at the price of $2,000. Priester went to see Mrs. Bostick, and persuaded her to join him and buy the property, representing to her that the appellants had priced these lots to him at $3,000. After much persuasion Mrs. Bostick consented to take a two-third interest in the property at the price of $2,000, which Priester falsely represented to be the price of same. Priester claimed to have in cash only $500, and he procured Mrs. Bostick to advance $1,000 in cash, pretending that he was going to make a cash payment of $1,500 on the land and execute notes for the remainder. She assented to this arrangement, and gave Priester $1,000 which she supposed he was going to pay on the property as her two-thirds of the cash payment on the

purchase price, and Priester to add to it the sum of $500 as his one-third of the cash payment to be made. Mrs. Bostick was made to believe by Priester that the price of the property was $3,000, whereas, in truth, it was only $2,000; and when Priester obtained the $1,000 from Mrs. Bostick, he put $500 of it in his pocket and made a cash payment to appellants of only $500. After pocketing the $500 and making the cash payment of the other $500, Priester procured Mrs. Bostick to execute two promissory notes for $500 each, payable in six and eighteen months, with interest at eight per cent. and stipulating that an additional sum of twenty per cent. should be added to the principal and interest in case of collection by suit. After this was done, Priester executed his note for $500, payable in twelve months, interest at eight per cent. with additional damage of ten per cent. if amount was collected by suit. Mrs. Bostick was always made to believe by Priester that the price of the property was $3,000. She thought she was to pay two-thirds of this amount, and get a two-thirds interest in the property, and she was made to believe that Priester was to pay one-third and get a one-third interest in same. She believed that $1,500 was to be paid in cash, of which she was to pay $1,000, and that Priester was to pay $500; and hence it was that she paid the cash of $1,000 and executed her notes for the other $1,000. The truth was that the price of the property was only $2,000, and Priester deceived her, and paid no cash himself, but, on the contrary, pocketed the $500 of the money that Mrs. Bostick had given him, only paying $500 of the $2,000 which was the agreed purchase price of the property. Appellants knew nothing of all this; that is to say, they did not know of the fraud being practiced on Mrs. Bostick by Priester. To still further cover up the fraud, and in order to keep Mrs. Bostick deceived as to the price appellants had agreed to let Priester have the property for, when the deed was made, Priester procured appellants to write into the deed as

the consideration the purchase price of $3,000, reciting a paid consideration of $1,500, the balance to be paid as above specified, claiming to appellants that it would help the purchasers get a good price for the property.

Appellants did not know of the fraud being practiced on Mrs. Bostick by this act, but made the deed as Priester requested. The notes of Mrs. Bostick are binding upon her so far as appellants are concerned. They participated in no fraud. We do not think the decree of the chancellor, in relieving her of responsibility, can be upheld under the facts of this record, either in law or in fact. The court should have entered a decree condemning to be sold the property described in the bill of complaint for the purpose of satisfying the vendor's lien on same, and, in the event the property did not bring enough to satisfy the note of Mrs. Bostick, the appellants are entitled to a judgment over. It does not appear in this record that Priester, who is a nonresident, was ever properly brought before the court by summons, either on the original bill or the cross-bill, and for this reason the decree as to him is a nullity and must be reversed.

When the court below acts in the case again, it should order process to issue, in order that Priester may be made a party to the suit, and when he is made a party, if the facts of the case are as they are now with reference to him, the court should order a decree against him, condemning his one-third interest to be sold for the purpose of satisfying the notes executed by him to appellants, and, in ordering the property to be sold, the court should direct that the interest of Priester in this property be first sold, and the proceeds thereof applied to his indebtedness on the note which he executed to appellants. If, upon the sale, the interest of Priester shall bring more than his debt to appellants, the court should order the surplus to be credited on the notes of Mrs. Bostick, and condemn her two-thirds interest to be sold for only such balance as may remain after giving her the afore-

said credit; and if there still remains a balance due appellants by Mrs. Bostick, appellants are entitled to a decree over such balance. We say nothing at this time as to the right of appellants to collect the twenty per cent. damage.

*Reversed and remanded.*